# In the United States Court of Federal Claims

|  |  |
|---|---|
| ADVANCED SIMULATION TECHNOLOGY INC., <br><br> *Plaintiff,* <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant.* | No. 23-2201 C <br><br> (Filed: August 9, 2024) |

Hamish Hume, Boies Schiller & Flexner LLP, Washington, DC, for plaintiff.

Brendan Jordan, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting the Government's Motion to Dismiss**

**SILFEN,** *Judge.*

Advanced Simulation Technology, Inc. (ASTi) sells software to the military to train servicemembers on radio communication.[1] The government has also developed its own training software, called Digital Radio Management System (DRMS). ASTi alleges that the government has violated its statutory duty under the Competition in Contracting Act to consider commercial alternatives by starting the process of creating DRMS-Next Generation, a new version of the DRMS training software. Initially, ASTi protested the government's decision to purchase parts and services from a third party, Bowhead Professional and Technical Solutions, LLC, without first

---

[1] This opinion was originally issued under seal to give the parties an opportunity to propose redactions of protected material. The parties had no proposed redactions. The court reissues this opinion publicly.

1

soliciting offers from other vendors. The government took corrective action and canceled the Bowhead contract.

The government now moves to dismiss this case, arguing that there is no longer any procurement to protest. ASTi alleges that there is still a procurement to protest because the government is still working on developing DRMS and still needs the goods and services it had planned to get from Bowhead. ASTi also notes that a military contractor posted jobs for DRMS technicians, arguing that the job posting underlies a quiet government effort to continue to work on DRMS without ever soliciting offers from the public. ASTi seeks a declaratory judgment and a permanent injunction and, in the alternative, asks this court either to allow ASTi to amend the complaint or to transfer the case to the District of Columbia district court, rather than granting the government's motion to dismiss.

At this point, after the Bowhead contract has been canceled, there has not been a sufficiently concrete government procurement action that would make ASTi's bid protest ripe. Thus, this court **grants** the government's motion and **dismisses** ASTi's first amended complaint. Because amendment would be futile and transfer would be inappropriate, this court **denies** ASTi's alternative request for leave to amend or to transfer.

**I.   Background**

The Naval Air Warfare Center Training Systems Division is a Defense Department laboratory that developed DRMS. ECF No. 48-1 at 2 [¶6]. Since it created DRMS more than 20 years ago, the military has maintained and upgraded the software to meet its training needs. ECF No. 48-1 at 2 [¶6]. DRMS-Next Generation (DRMS-NG) is an iterative improvement on DRMS. ECF No. 48-1 at 2 [¶7].

ASTi offers a commercial product line, Voisus, that provides a military training and simulation system that, ASTi alleges, performs functions similar to DRMS-NG. ECF No. 21 at 25 [¶¶67-70]. ASTi alleges that its software is superior to the DRMS software. *Id.* at 4 [¶¶11-12].

In the summer of 2023, the government awarded a sole-source indefinite delivery, indefinite quantity contract for DRMS hardware and software components to Bowhead. ECF No. 22-7. The government placed two delivery orders under the Bowhead contract, primarily for hardware components. ECF No. 22-5; ECF No. 22-9.

ASTi filed a bid protest in this court in December 2023, protesting the award of the contract to Bowhead. ECF Nos. 1, 47. The government took corrective action and canceled the contract, leaving in place only the two delivery orders that the government had already placed. ECF No. 26 at 6. ASTi moved to enjoin the government from accepting the goods in those delivery orders. ECF No. 22. After a hearing, the government terminated the orders. ECF Nos. 37, 37-1. The court then denied ASTi's motion for a preliminary injunction as moot. ECF No. 40.

The government now moves to dismiss the remaining claims under rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims (RCFC). ECF No. 46. ASTi opposes and requests, in the alternative, that this court grant it leave to amend the complaint or that this court transfer the complaint to the district court for the District of Columbia. ECF No. 47 at 39.

**II.     Discussion**

Under rule 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). If the court determines that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(b)(1); *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). A "plaintiff bears the burden of establishing subject

3

matter jurisdiction by a preponderance of the evidence." *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citation omitted). "Subject-matter jurisdiction may be challenged at any time." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

A complaint should be dismissed under rule 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (addressing earlier version of what is now RCFC 12(b)(6)). To avoid dismissal, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, rule 12(b)(6) ensures that the plaintiff has a claim for which this court can grant appropriate relief. In reviewing a motion to dismiss under rule 12(b)(6), the court will accept well-pleaded factual allegations as true and draw all reasonable inferences in the claimant's favor. *Lindsay*, 295 F.3d at 1257.

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b). The court can grant "any relief that the court considers proper," including injunctive relief. *Id*. But monetary relief for bid protests is "limited to bid preparation and proposed costs." *Id*.

The Competition in Contracting Act (CICA) requires agencies to provide "full and open competition through the use of competitive procedures" when procuring property or services.

41 U.S.C. § 3301(a). CICA allows non-competitive, sole-source contracts in certain circumstances, as long as the contracting officer provides written justification for skipping the competitive process. 41 U.S.C. § 3304(e).

With the Federal Acquisition Streamlining Act, Congress encouraged the federal government to contract for and use commercial goods instead of "expensive, specially designed products." 140 Cong. Rec. 24869 (1994), 1994 WL 513434. The Act requires agencies to buy commercially available technology "to the maximum extent practicable." 10 U.S.C. § 3453(a). Agencies must conduct market research to "determine whether there are commercial services or commercial products" that would meet, or could be modified to meet, the government's needs. 10 U.S.C. § 3453(c)(2).

### A.   The government has not undertaken a procurement or proposed procurement that can be challenged in this court

This court has jurisdiction to address "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b). The statutory term "in connection with a procurement or proposed procurement" "includes all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345-46 (Fed. Cir. 2008) (adopting the definition of "procurement" from 41 U.S.C. § 403, now 41 U.S.C. § 111). If the challenged action is not a procurement or a proposed procurement, this court lacks jurisdiction. *AgustaWestland N. Am. Inc v. United States*, 880 F.3d 1326, 1330-31 (Fed. Cir. 2018); *VFA, Inc. v. United States*, 118 Fed. Cl. 735, 738 (2014); *International Genomics Consortium v. United States*, 104 Fed. Cl. 669, 677-78 (2012).

The government argues that because the "research and development of DRMS is not a procurement, this Court does not possess jurisdiction to enjoin [the training system lab's] research

5

and development of DRMS." ECF No. 46 at 10. ASTi's response focuses on three categories of government actions that it alleges amount to a procurement or proposed procurement: (1) ASTi alleges that the government is continuing to develop software internally and its decision to "develop a finished system to meet specific needs in lieu of acquiring … an available commercial product that meets those needs" is "procurement-related"; (2) ASTi alleges that the government's efforts to fulfill the needs from the canceled Bowhead contract demonstrate "an ongoing effort to undertake a procurement"; and (3) ASTi alleges that the training systems lab is procuring services from outside contractors to develop DRMS software. ECF No. 47 at 3-4. None of those government actions, individually or collectively, amount to a procurement that is ripe for ASTi to challenge.

### 1. The government's decision to internally develop DRMS was not a procurement

ASTi argues that the government determined a need for software, and "the ongoing need to acquire the subject products and services in connection with the larger DRMS-NG development effort establishes the requisite connection to a procurement or proposed procurement." ECF No. 47 at 17. According to ASTi, the "entire point of DRMS-NG is to acquire a new system for the Government's use," and the government's developing its own software rather than procuring it is "necessarily in connection with assorted procurements." ECF No. 47 at 18. In other words, ASTi argues that the government's choice to develop a product in-house means that it has determined a need and has decided not to procure that product externally, a procurement-related decision.

With the DRMS and DRMS-NG projects, the government has continued a process of developing software that it started more than twenty years ago. It has not issued a request for information or other solicitation. Any government choice to continue developing its software does not amount to a procurement that is ripe for a bid protest.

This court has held that the definition of the term "procurement" cannot be as broad as ASTi argues. If a procurement occurs "every time the government chooses not to procure a good or service from a private contractor, and instead creates or develops something on its own," that definition would "eliminate any restrictions of the Tucker Act." *VFA, Inc. v. United States*, 118 Fed. Cl. 735, 743 (2014). In *VFA*, the court considered a protest of the Defense Department's decision to use internally developed building management software across the military. *Id*. at 736. The Defense Department had created the software in the 1970s and had worked to further develop and maintain that software. *Id*. at 737. In the 2000s, the Defense Department commissioned reports to review the state of the software. *Id*. at 737-38. To address the concerns in those reports, the Defense Department determined that it needed to standardize building management software using the program it had created in the 1970s. *Id*. The court concluded that the Defense Department's decision to use the internally developed software, instead of conducting a competitive procurement, was not a procurement that VFA could challenge in this court. *Id*. at 737.

Like in *VFA*, the government's decision to internally develop DRMS more than 20 years ago (ECF No. 48-1 at 2 [¶6]) and iteratively improve it with DRMS-NG (ECF No. 48-1 at 2 [¶7]), is not a procurement. The government's internal action—where "it already possessed [the software] it wanted to use, and there was no reason to acquire anything" (*VFA*, 118 Fed. Cl. at 741)—cannot be the basis to force the government to undertake a solicitation and potentially buy something beyond what it already owns.

Nor is the development of DRMS-NG "in connection with a procurement or a proposed procurement" (28 U.S.C. § 1491(b)), even if the government has determined the needs that DRMS-NG must meet. ASTi relies on the definition in *Distributed Solutions* that the term "procurement" includes "the process of determining a need for property or services." ECF No. 47 at 13 (citing

*Distributed Solutions*, 539 F.3d at 1345). In *Distributed Solutions*, the government had used a request for information to solicit responses from vendors for software that would perform specific functions. 539 F.3d at 1345-46. Likewise, in *Percipient.ai, Inc. v. United States*, 104 F.4th 839, 851-52 (Fed. Cir. 2024), which ASTi also cites (ECF No. 49), the bid protest occurred after a contract award, when there had already been a solicitation. Here, other than the Bowhead contract that has been canceled and an outside contractor promoting a job opportunity, both of which are discussed below, there is no concrete evidence that the government has bought any products, intends to solicit any goods or services, or otherwise has undertaken any concrete procurement actions. And, as the government points out (ECF No. 48 at 14), any government decision to transfer, lease, or sell DRMS—a product already owned by the government—is not a procurement action at all.

Indeed, as the government points out, there are practical problems with the court reviewing a set of government actions as amorphous as continuing to develop software that it first developed decades ago. It is not clear what an administrative record would look like, when it covers that time span, an indeterminate set of decisionmakers, and a set of decisions whose boundaries are difficult or impossible to delineate. *See* ECF No. 46 at 17; ECF No. 48 at 11-12. Also, allowing a plaintiff to protest any government decision not to procure a product or service "would unlock a veritable Pandora's box" of protests against agency decisionmaking. *International Genomics*, 104 Fed. Cl. at 676-77. And those problems are not just practical; they also underscore the fundamental requirement that, for a plaintiff to have standing and for this court to have jurisdiction, the plaintiff's injury must be concrete. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) ("[T]he irreducible constitutional minimum of standing" requires showing "an injury in fact—an invasion

of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." (marks and citations omitted)).

 This is not to say that a government decision to develop its own product is never one that a private party can protest. At some point, a government decision to develop a product can amount to having determined a need under *Distributed Solutions*, and then the government needs to look at possible outside suppliers. 10 U.S.C. § 3453. But when the government is working on software that it developed long ago and has not issued any solicitations or requests for information (other than the since-canceled Bowhead contract), the alleged procurement is simply too speculative to fall within the court's jurisdiction. *See Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-81 (1985) (A case is unripe when it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." (quotation marks omitted)).

 If the government were to buy component parts in the ongoing development of DRMS, such as those that were previously under the Bowhead contract, that procurement decision would not reopen to bid protests the government's decades-old decision to build the software itself. CICA states that agencies shall, to the maximum extent practicable, "acquire commercial services, commercial products, or non-developmental items other than commercial products to meet the needs of the agency." 10 U.S.C. § 3453(b). When an agency has internally developed software that meets its needs and is looking for hardware components that would work with that software, it does not make sense that this court would require the agency to resolicit the entire project to meet the "needs of the agency" (*id.*). Instead, the agency's only needs in that circumstance would be the hardware components it is seeking. If the government is looking to buy, for instance, a Virtual Tactical Bridge—a commercial product that was part of the Bowhead contract—CICA requires the government to look at Virtual Tactical Bridge manufacturers to competitively procure it; CICA does

9

not require the government to competitively procure a commercial replacement for all of DRMS, which the government developed decades ago.

Finally, ASTi suggests that this court can issue an injunction or declaratory judgment requiring the government to follow the procurement laws when it decides to overhaul DRMS, requiring it to perform market research on commercial products and potentially undertake a competitive bidding process. ECF No. 47 at 31. ASTi argues that it is not simply asking the government to "follow the law" because ASTi has made specific allegations that the government has already violated the law by deciding to develop DRMS-NG without taking those required steps. *Id.* (citing *Unison Software, Inc. v. United States*, 168 Fed. Cl. 160, 170-71 (2023)). But the effect is essentially the same: As in *Unison*, with no concrete procurement happening, "[t]elling the government to follow the law, which the government is already obligated to do, would not redress any injury and would not provide" ASTi "with any relief it does not already have." 168 Fed. Cl. at 171.

### 2. For the government's acquiring the goods that Bowhead would have provided, ASTi's protest is premature

ASTi points to a concrete procurement decision when the government sent Bowhead a request for a proposal for hardware and software components to support DRMS. ECF No. 22-7 at 1; ECF No. 21 at 6-7 [¶¶19-20]. The government later canceled the Bowhead contract. ECF No. 37. ASTi argues that the government will inevitably want to buy the products that it is no longer getting from Bowhead. But right now there is no procurement that this court could enjoin. ASTi's protest of the government's possible future solicitation for or purchase of those products is not ripe.

Ripeness is intended "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Union Carbide*, 473 U.S. at 580. A matter is unripe when it involves "contingent future events that may not occur as anticipated, or indeed may not

occur at all." *Id.* at 580-81. The court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration" when determining if a claim is ripe for review. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The fitness of an issue for judicial review turns on if an action marks the "consummation of the agency's decision-making process" and if "rights or obligations have been determined or from which legal consequences will flow." *Systems Application & Technologies, Inc. v. United States*, 691 F.3d 1374, 1384 (Fed. Cir. 2012) (marks omitted). A case is not ripe when "further factual development would significantly advance [the court's] ability to deal with the legal issues presented." *National Park Hospitality Association v. Department of Interior,* 538 U.S. 803, 812 (2003) (citations omitted).

In evaluating hardships, the Federal Circuit has distinguished hardships associated with changes in daily business operations—which weigh in favor of ripeness—from more general "business uncertainty associated with awaiting a final decision from an agency"—which does not. *U.S. Association of Importers of Textiles and Apparel v. Department of Commerce*, 413 F.3d 1344, 1350 (2005). This court has similarly found that waiting for an agency decision is not enough to show a hardship for ripeness purposes. *Pernix Group, Inc. v. United States*, 121 Fed. Cl. 592, 599 (2015) ("In the bid protest context, there is no measurable hardship, at the time of the protest, flowing from a future, hypothetical agency decision adverse to the protestor."); *Texas Bio- & Agro-Defense Consortium v. United States*, 87 Fed. Cl. 798, 806 (2009) (finding that the plaintiff would not suffer hardship when the difficulties that the plaintiff described stemmed from the potential loss of a future contract).

Here, it is not even clear, now that the Bowhead contract has been canceled, if ASTi's bid protest is a pre-award bid protest or a post-award bid protest. *See* 28 U.S.C. § 1491(b)(1) (giving

11

this court jurisdiction over both pre- and post-award bid protests). When ASTi filed its complaint, it alleged that the Bowhead contract was unlawful, post award. But now that there is no Bowhead contract to protest, there is no particular award to protest.

ASTi argues that the government has "made the decision to develop" and that the government has "taken concrete steps along that path." Hearing Tr. 40:1-16, June 7, 2024. ASTi argues that the government already completed the initial steps of the procurement process when it determined the needs for the component parts that wound up in the Bowhead contract. ECF No. 47 at 16 ("[N]othing has changed with respect to the Government's determined need for the goods and services that were in the Bowhead contract."). But even if under *Distributed Solutions* there has been a determination of needs, ripeness requires that the procurement present a concrete, non-abstract issue. *Abbott Laboratories*, 387 U.S. at 148-49.

With the cancellation of the Bowhead contract, the complaint is now based on future events that may not occur. "[A]mple precedent exists for dismissing as moot [a] plaintiff's challenge to the original evaluation and award based on [an agency's] decision to cancel [a] Solicitation and re-procure." *Square One Armoring Serv., Inc. v. United States*, 123 Fed. Cl. 309, 325-26 (2015) (collecting cases). And even if the government issues a new solicitation, the court cannot assume that the resolicitation will incorporate the same statutory violations that ASTi alleged in the initial solicitation. *See* ECF No. 46 at 2 (government conceding that in the Bowhead solicitation it "did not sufficiently document commerciality determinations with respect to the products it intended to acquire through the Bowhead contract"). Instead, the court must "assume that the Government would carry out the corrective action in good faith." *Chapman Law Firm Co. v. Greenleaf Construction Co.*, 490 F.3d 934, 940 (Fed. Cir. 2007). There is no evidence that any resolicitation will improperly exclude ASTi from competing for that contract. In fact, a resolicitation will return

ASTi to its "competitive position prior to the deficiency." *AccelGov, LLC v. United States*, 166 Fed. Cl. 606, 610 (2023).

ASTi also has not shown that it would suffer hardship from this court's withholding consideration. While ASTi will have to wait for the government to resolicit the contract for goods and services that the Bowhead contract initially addressed, ASTi has not shown harm because of that potential delay. At the hearing, ASTi's counsel mentioned that the government has been removing ASTi software and hardware from certain military installations. Hearing Tr. at 51:19-52:13; *see also* ECF No. 22-2 at 4-5 [¶12]. But that alleged removal of equipment has occurred over time. ECF No. 22-2 at 4-5 [¶12]. ("Over the past two years, ASTi has been told by one sergeant and a captain in the Air National Guard that ASTi's products have been uninstalled and ripped out of at least two training sites at Joint Base Andrews and the Adirondack Range."). And the government's decision to stop using ASTi's products is not itself a procurement decision. ASTi has not provided any evidence of changes to its day-to-day business from the delay that would constitute a hardship. *See Abbott Laboratories,* 387 U.S. at 152.

ASTi relies on *Hydraulics International, Inc. v. United States*, 161 Fed. Cl. 167 (2022), to argue that the early stages of a procurement can present questions that are ripe for judicial review. ECF No. 47 at 16-17. In *Hydraulics*, the government requested white papers from the relevant industry. 161 Fed. Cl. at 172-173. This court found that the request for white papers served a similar purpose to the request for further information in *Distributed Solutions*, to determine the parameters of an eventual procurement. *Id*. at 177. But the government in *Hydraulics* had not taken corrective action to rescind the request for white papers. Here, the government canceled the Bowhead contract, undoing its initial procurement action. As ASTi acknowledged in the hearing, the alleged procurement here "starts with a determination of needs, but at least in terms of Section

3453 protest, it's not going to ripen. There's not going to be a statutory violation until they've made the decision to develop and taken steps along … that path, which will reveal the decision to develop to the public." Hearing Tr. at 41:14-24. Unlike in *Hydraulics*, the government has not taken the steps along the path to a resolicitation that would make it ripe for protest.

ASTi's concern about a possible resolicitation is not ripe. During (for a pre-award protest) or after (for post-award) any resolicitation, if the government fails to properly carry out its duties, ASTi "will have the opportunity to challenge the new award decision." *Square One Armoring Service, Inc. v. United States*, 123 Fed. Cl. 309, 329-30 (2015).

### 3. Any government procurement of services from outside contractors does not give the court jurisdiction

Finally, ASTi argues that the use of outside contractors to develop DRMS-NG makes the development effort a protestable procurement. ECF No. 21 at 7-9 [¶¶21-24]. ASTi argues that the Bowhead contract confirms that the government intends to use outside contractors. ECF No. 21 at 30 [¶84]. ASTi also points to a job announcement from Huntington Ingalls Industries, Inc., seeking to hire DRMS engineers, to show that outside contractors are involved in the development of DRMS-NG. ECF No. 21 at 6-7 [¶¶20-21]; ECF No. 47 at 8-9, 33-35; ECF No. 47-1.[2] The government responds that outside contractors can work alongside government employees in a research facility, such as the training systems lab, "without needing a procurement contract in place for that relationship to exist." ECF No. 46 at 16-17.

---

[2] ASTi further argued that another outside contractor, SAIC, was involved in DRMS development. That allegation was based on an argument that an individual who worked for SAIC and worked at the training systems lab was the point person on the Bowhead contract. ECF No. 21 at 6-7 [¶20]; ECF No. 47 at 33. The government pointed out that there were two different people named Ruben Garcia, one an employee of SAIC and one an employee of the training systems lab. ECF No. 48 at 12 n.4. At the hearing, ASTi withdrew its argument based on SAIC. Hearing Tr. at 42:6-20.

ASTi bears the burden of establishing jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942) ("[I]f a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof."); *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."). This "court is not expected to, nor should it, simply allow plaintiffs to embark on a wide-ranging fishing expedition in hopes that there may be gold out there somewhere, or worse, in hopes that the Government will get tired of litigating and settle an otherwise unprovable case." *Monarch Assurance P.L.C. v. United States*, 244 F.3d 1356, 1365 (Fed. Cir. 2001).

The alleged hiring of outside contractors to work on DRMS is too vague to support ASTi's complaint and, regardless, would have to be brought as a separate bid protest in which Huntington Ingalls or other outside contractors could participate as intervenors. ASTi has not shown whether the alleged outside contractors were retained at all, if so whether they were retained through a procurement process, or whether any contract was for DRMS development. During the hearing, ASTi stated that it does not "know precisely what Huntington Ingalls has been asked to do, but what [it does] know is that [Huntington Ingalls has] been asked to develop for DRMS because that's what the job announcement says." Hearing Tr. at 44:15-24. Furthermore, as the government made clear, it has continuously updated and developed DRMS in the decades since creating it. ECF No. 48-1 at 2 [¶¶6-7].

ASTi asserts that, under Federal Circuit precedent, building upon a prior system was not a bar to a CICA claim when the improvement was a "massive iteration" on a previously developed software with "lots of problems" that "required substantial development and engineering." Hearing Tr. at 50:13-51:6 (citing *Palantir USG, Inc. v. United States*, 904 F.3d 980 (Fed. Cir. 2018)). But

15

ASTi has not shown that the possible Huntington Ingalls contractors' work on DRMS involves such a massive improvement. If ASTi were to find evidence to support its assertion that outside contractors are being used to develop a new version of DRMS, and if ASTi were even interested in performing the services that those contractors might be performing, ASTi could potentially file a new complaint to allege a problem with that procurement.

Furthermore, ASTi's existing complaint did not give Huntington Ingalls or any other contractor sufficient notice of its concerns to allow the contractors to intervene. The rules of this court require that a plaintiff must "provide advance notice of filing a protest case to … the apparently successful bidder/offeror …. [a]t least 1 day—but no earlier than 5 days—in advance of filing a protest case." RCFC app. C [¶2]. ASTi filed the required pre-filing notice in late December 2023, stating that it had provided a copy to Bowhead. The pre-filing notice does not mention Huntington Ingalls, and ASTi stated that, as of June 2024, it still had not notified Huntington Ingalls of the protest. Hearing Tr. at 46:1-20. There is no evidence that Huntington Ingalls is on notice that it should intervene in this case to protect its interests. Given that even ASTi apparently did not believe Huntington Ingalls would be a potential intervenor in this suit, it would not make sense to maintain the suit against only Huntington Ingalls. The Huntington Ingalls job posting is not a government procurement that ASTi can protest in this case.

**B.    Granting ASTi leave to amend its complaint or transferring the complaint to the District of Columbia district court is not in the interest of justice**

ASTi requests that, if the court concludes that it lacks jurisdiction, it should "give ASTi leave to amend, or if the Court deems amendment futile, to transfer the case to the District of Columbia." ECF No. 47 at 39; *see* Hearing Tr. 58:19-59:20. ASTi does not develop either argument, and the court will not develop the arguments for the parties.

This court's rules allow a plaintiff to amend its complaint once within 21 days after service of the complaint, or with the government's written consent or the court's leave "when justice so requires." RCFC 15(a). ASTi filed its complaint five months before this request to amend and has already amended its complaint once (ECF No. 21). The government opposes the proposed amendment. ECF No. 48 at 16-17.

Justice does not require allowing further amendment in this case. When an amendment to a complaint would "radically alter the scope and nature of the case and bears no more than a tangential relationship to the original action," a motion for leave to amend should be denied. *Mississippi Association of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C. 1991). Otherwise, plaintiffs could "transform their case into something entirely new" to ensure that "the sun never set on [their] case." *Id*.

If ASTi were to amend its complaint to protest the Huntington Ingalls hirings, it would radically alter the scope of this bid protest. The initial and amended complaints focused on the Bowhead contract and did not even put Huntington Ingalls on notice that its contractor work might be at issue. *See generally* ECF Nos. 1, 21. Huntington Ingalls would be given an opportunity to intervene only now, many months and decisions into the case. And ASTi's amended complaint would have to allege actions specific to the contracts with Huntington Ingalls and other contractors that it contends exist.

The court also will not transfer the case to the District of Columbia district court. ASTi apparently seeks a transfer to the district court to pursue a case under the Administrative Procedure Act (APA). ECF No. 48 at 15; Hearing Tr. 59:20.

Transfer to a district court "is appropriate if (1) the transferor court lacks jurisdiction; (2) the action could have been brought in the transferee court at the time it was filed; and (3) transfer

17

is in the interest of justice." *Zoltek Corp. v. United States*, 672 F.3d 1309, 1314 (Fed. Cir. 2012). "A case may be transferred under [28 U.S.C.] 1631 only to a court that has subject matter jurisdiction." *Jan's Helicopter Service, Inc. v. Federal Aviation Admin.*, 525 F.3d 1299, 1303 (Fed. Cir. 2008).

A plaintiff may generally file an APA suit only when challenging a final agency action. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). A final agency action is "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. 551(13). ASTi explained in the hearing that the alleged final agency action it would be challenging under the APA would be the government's "decision to develop." Hearing Tr. 59:20. Because a decision to develop is not a solicitation, there is no final agency action. The government correctly points out that, because there is no final agency action that ASTi can challenge, it is unclear whether the district court would have jurisdiction. ECF No. 48 at 15. Transfer is therefore inappropriate.

### III.  Conclusion

For the reasons stated above, this court **grants** the government's motion to dismiss and **denies** ASTi's request for leave to amend the complaint or transfer the case. The Clerk of the court shall enter judgment accordingly.

**IT IS SO ORDERED.**

 s/ Molly R. Silfen
MOLLY R. SILFEN
Judge